FILED

2013 Nov-18  PM 03:32
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **TAVARES JIMMEH DAVIS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 2:12-CV-2867-VEH** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **ACTING COMMISSIONER,** ) | |
| **S O C I A L   S E C U R I T Y** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| **Defendant.** ) | |

---

## **MEMORANDUM OPINION**[1]

Plaintiff Tavares Jimmeh Davis ("Mr. Davis") brings this action under 42

U.S.C. § 405(g), § 205(g) of the Social Security Act.  He seeks review of a final

adverse decision of the Commissioner of the Social Security Administration

---

[1]  The court notes that, on February 14, 2013, Carolyn W. Colvin was named the Acting Commissioner of the Social Security Administration. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security."). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the officer of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

("Commissioner"), who denied his applications for Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI").[2]   Mr. Davis timely pursued and

exhausted his administrative remedies available before the Commissioner.   The case

is thus ripe for review under 42 U.S.C. § 405(g).[3]

## FACTUAL AND PROCEDURAL HISTORY

Mr. Davis was twenty-five years old at the time of the onset of his alleged

disability on September 13, 2008, and was twenty-seven years old at the time of his

hearing before the Administrative Law Judge ("ALJ").   (Tr. 22).   He has an

occupational high school diploma, with some special education classes taken mostly

in math.   (Tr. 50).   Mr. Davis's past work experience includes service station

attendant, auto parts clerk, and hand packager.   (Tr. 69).   He claims he became

disabled on September 13, 2008, due to attention deficit disorder (ADD).[4]   (Pl.'s Br.

1-2).

On October 27, 2008, Mr. Davis protectively filed applications for DIB and

---

[2]   In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

[3]   42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

[4]   Claimant originally claimed ADD as his only disability; however, the ALJ used Dr. Markert's diagnosis of history of attention deficit hyperactivity disorder (ADHD).

SSI.  (Tr. 76).  On December 16, 2008, the Commissioner initially denied the claim. (Tr. 78).  Mr. Davis timely filed a written request for a hearing on January 15, 2009. (Tr. 90).  The ALJ conducted a hearing on the matter on July 21, 2010.  (Tr. 42).  On August 26, 2010, the ALJ issued his opinion concluding that Mr. Davis was not disabled and denied him benefits.  (Tr. 16).  Mr. Davis timely petitioned the Appeals Council ("AC") to review the decision on September 27, 2010 (Tr. 14), and on June 29, 2012, the Appeals Council issued a denial of review on his claim.  (Tr. 1).

Mr. Davis filed a Complaint with this court on September 12, 2012 seeking review of the Commissioner's determination.  (Doc. 1).  The parties having fully briefed the matter, the court has carefully considered the parties' arguments and the record, and, for the reasons stated below, affirms the Commissioner's denial of benefits.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."

*Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[5] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

---

[5] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, current through July 11, 2013.

or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i–v). The Commissioner must determine in sequence:

> (1) whether the claimant is currently employed;
> (2) whether the claimant has a severe impairment;
> (3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
> (4) whether the claimant can perform his or her past work; and
> (5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562–63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the

[Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy

in significant numbers. *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After consideration of the entire record, the ALJ made the following findings

of fact and conclusions of law:

1.     The claimant filed applications for a period of disability, disability insurance benefits, and supplemental security income on October 27, 2008, in which he alleged that he became disabled on September 13, 2008.  (Tr. 31).  He last has disability insured status on September 30, 2014.

2.     There is no evidence that the claimant has performed substantial gainful activity since September 13, 2008.

3.     The claimant has the "severe" impairments of mood disorder and history of attention deficit hyperactivity disorder.  He does not have an impairment, or combination of impairments, which meets or equals the criteria of an impairment listed in Appendix 1, Subpart P, 20 C.F.R. Part 404.

4.     The evidence as a whole fails to confirm disabling limitations arising from the claimant's impairments, and his impairments are not of such severity that they could reasonably be expected to give rise to disabling limitations, for the reasons set out in the body of this decision.

5.     The claimant retains the residual functional capacity to perform medium work with the limitations of simple, repetitive, non-complex tasks.  He should primarily work around things and not the general

public; and he should have only occasional contact (one-third of the time) with coworkers and supervisors.  Any testimony or allegations otherwise are not credible.

6.     The claimant is a younger individual.

7.     The claimant has an occupation high school diploma.

8.     The claimant's past relevant work was performed at the medium level of physical exertion and was unskilled to semiskilled work.

9.     Although the claimant is unable to perform the full range of medium work, using Medical-Vocational Rules 2032.5 and 203.26 as a framework for decision-making, there are a significant number of medium jobs in the national economy that he could perform.  Examples of such jobs include laundry worker, machine feeder, and order picker.

10.     The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

(Tr. 31-32).

Accordingly, the ALJ concluded that Mr. Davis has not been under a disability, as defined in the Social Security Act, from September 13, 2008, through the date of the ALJ's decision.

## ANALYSIS

### I. INTRODUCTION

Mr. Davis has asserted that the ALJ erred with regard to the weight he gave to non-physician medical opinion, his assessment of the impact of potentially disabling side effects, and his assessment of Mr. Davis's impairments regarding his ability to

7

work.  After reviewing the entire record, this court has concluded that (1) the ALJ followed proper legal standards in determining that Mr. Davis was not disabled, (2) substantial evidence supported the ALJ's finding that Mr. Davis was not disabled under the Social Security Act, and (3) substantial evidence supported the ALJ's finding that Mr. Davis is capable of performing medium work with some limitations. Therefore the Commissioner's denial of Social Security benefits will be affirmed.

## II. THE ALJ APPLIED PROPER LEGAL STANDARDS IN HIS DETERMINATION OF DISABILITY

Disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  It is the claimant's burden to establish that an impairment meets or equals a listing. *Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987).

As noted earlier, the ALJ found Mr. Davis's history of ADHD and mood disorder as severe impairments.  (Tr. 31).  A severe impairment significantly limits an individual's physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c) (2012).

To evaluate a claim of disability based on a mental impairment, the ALJ must

follow a special procedure, often referred to as the Psychiatric Review Technique, that is set out at 20 C.F.R. § 416.920(a).  20 C.F.R. § 416.920(a)(b)(2) provides that the ALJ must rate the degree of functional limitation resulting from the impairments in accordance with paragraph (c) of that section and must record the findings as set out in paragraph (e) of that section.  Subparagraph (c)(4) requires the degree of limitation in the functional areas of daily living; social functioning; and concentration, persistence or pace be rated using a five point scale of: "None, mild, moderate, marked, and extreme," and the degree of limitation in the fourth functional area (episodes of decompensation), be rated using the four-point scale of: "None, one or two, three, four or more."  The Regulations provide in pertinent part that "[a]t the administrative law judge hearing [level] ... the decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."  29 U.S.C. § 416.920(a)(e)(4).

The effects of an impairment are measured by the limitations on the ability to work.  *Olsen v. Astrue*, 858 F. Supp. 2d 1306, 1314–15 (M.D. Fla. 2012).  The ALJ must consider a claimant's limitations on the ability to work when assessing the severity of an impairment.  *See* 20 C.F.R. §§ 416.920(c), 416.921 (limitations from an impairment determine whether it is severe).  If the ALJ finds a claimant's impairment or combination of impairments to be severe, then the ALJ must determine

9

whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926).  For a finding of severe disability according to a Listing, there must be at least two marked difficulties in these categories.  *Stiles ex rel. C.M.S. v. Astrue*, No. 5:07-CV-52-Oc-GRJ, 2008 WL 879299, at *2 (M.D. Fla. Mar. 28, 2008).

In accordance with the requirements of 20 C.F.R. § 416.920(a)(c)(4), the ALJ found that Mr. Davis's severe impairments of ADHD and mood disorder caused moderate restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation that had been of an extended duration. (Tr. 26).  Thus, Mr. Davis's mental impairments were determined to cause moderate difficulties in three of the four broad areas of functioning.

The ALJ then found that Mr. Davis's mood disorder and history of attention deficit hyperactivity disorder ("ADHD") did not satisfy "paragraph B" criteria or "paragraph C criteria of the applicable mental disorder listing(s)." (Tr. 14).  In fact, the ALJ specifically refers to paragraph C of Listing 12.04 and found that Mr. Davis did not have a combination of mental disorders with the required level of functional limitation.  *Id.*

## III. THE ALJ'S DISABILITY FINDING WAS
## BASED ON SUBSTANTIAL EVIDENCE

## A. THE ALJ CORRECTLY DISCOUNTED THE NURSE
## PRACTITIONER'S OPINION AND QUESTIONNAIRE

Disability is determined by the ALJ in conjunction with medical reports. The opinions of the plaintiff's treating sources are generally given more weight than "objective medical findings or from reports of individual examinations, such as consultative examinations." 20 C.F.R. § 416.927(c)(2) (2012). The longer a treating source has treated a plaintiff, and the more knowledge they have of the impairments, the more weight will be given to the opinion. 20 C.F.R. § 404.1527(c) (2012). Nurse practitioners are recognized as an "other source" and can only "show the severity of [the] impairment(s) and how it affects [the] ability to work." 20 C.F.R. § 404.1513(d)(1) (2013). However, if a nurse practitioner works closely, is supervised, and has her diagnoses approved by a doctor, her diagnoses can be considered acceptable medical evidence, rather than just "other evidence;" they may also be considered a treating source due more weight. *King v. Astrue*, 493 F. Supp. 2d 1232, 1234 (S.D. Ala. 2007). Diagnoses from nurse practitioners acting alone do not constitute substantial medical evidence, and cannot be considered to override the medical opinion of a physician. *See id.* Also, specialists are generally entitled to more weight than the opinion of a source who is not a specialist when the ALJ

balances conflicting medical testimony. *King v. Barnhart*, 320 F. Supp. 2d 1227, 1231-1232 (N.D. Ala. 2004).

The ALJ can disregard non-medical source opinions based on a claimant's report of his subjective symptoms when they conflict with acceptable medical sources and records, which are entitled greater weight. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004). Additionally, the ALJ does not have to weigh evidence from nurses if he finds it conclusory. *See Corbitt v. Astrue*, No. 3:07-CV-518-J-HTS, 2008 WL 1776574, at *1–2 (M.D. Fla. Apr. 17, 2008).

First, the ALJ stated that the claimant had "severe impairments" of mood disorder and history of ADHD based on Mr. Davis's history and Dr. Markert's report. (Tr. 31). Dr. Markert, a psychologist, consulted with Mr. Davis once in December of 2008. *Id.* Dr. Markert concluded that Mr. Davis's prognosis would improve if he met with a psychiatrist for a trial of ADHD medication and a therapist to learn coping mechanisms. (Tr. 23, 31).

The ALJ then correctly discounted Birmingham Health Care's report that the claimant had been diagnosed by Ms. Garvey in April of 2010 with psychosis not otherwise specified, depression not otherwise specialized, and rule out mood disorder, because Ms. Garvey was a nurse practitioner, acting alone, without supervision or approval of a doctor. (Tr. 28). Because Dr. Markert was a specialist in psychology,

12

the ALJ properly gave significant weight to Dr. Markert's diagnosis as medical evidence and appropriately discarded Ms. Garvey's diagnoses as unacceptable medical evidence.

Secondly, Ms. Garvey's questionnaire was based entirely on subjective complaints, was conclusory, and had no objective clinical evidence. The questionnaire simply asked several questions and Ms. Garvey gave no explanation or follow up surrounding the report. (Tr. 249–50). As the ALJ stated in his decision, it is odd that Ms. Garvey "diagnosed" the claimant with these serious and debilitating mental illnesses but never referred him to a doctor. (Tr. 29). Also, the ALJ pointed out that the claimant's daily activities did not reflect the activities of someone suffering from such severe mental disabilities. *Id.*

### B. THE ALJ CORRECTLY ANALYZED
### MR. DAVIS'S COMBINATION OF SEVERE IMPAIRMENTS

The ALJ correctly evaluated Mr. Davis's various severe impairments separately and also considered whether their combined impact rendered him disabled. In determining whether a claimant is disabled under the Social Security Act, the ALJ must make "specific and well-articulated findings" as to the combined effect of all impairments that a claimant has. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (citations omitted); *see also Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir.

1986) (holding that ALJ must address the degree of impairment caused by the "combination of physical and mental medical problems") (citations omitted); *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (finding that an ALJ did not give adequate consideration to effect that combination of exertional and non-exertional impairments had on claimant's ability to work).  Importantly, where there is more than one impairment, the claimant may be found disabled even though none of the individual impairments is disabling.  *Walker*, 826 F.2d at 1001 (citation omitted).  The ALJ's failure to consider properly a claimant's condition requires remand.  *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1220 (11th Cir. 2001).

The ALJ met this requirement when he discussed the combination of impairments in determining that Mr. Davis's severe impairments only limited him moderately in a job context.  (Tr. 26–27).  Mr. Davis relied, once again, on Ms. Garvey's evaluation, as well as the emergency room physician of his August 17, 2008 visit, in an effort to show reversible error on the part of the Commissioner.  (Tr. 219).  As previously discussed, the ALJ discarded the nurse practitioner's diagnoses correctly.  The ALJ also correctly discounted the emergency room visit, stating that although Mr. Davis had been diagnosed with anxiety disorder by the ER physician, he had not been diagnosed with anxiety disorder again by any other medical professional, including Ms. Garvey.  (Tr. 25).

14

During his consultative examination ("CE") with Dr. Markert, she found that Mr. Davis was mildly irritable, but he was not hearing voices, having periods of decomposition, or violent thoughts (suicidal or homicidal). (Tr. 28). During the ER trip and the CE with Dr. Markert, Mr. Davis actually told both doctors that he thought that medication and counseling would help him, and that it had helped him when he was younger. *Id.* Also, this ER trip occurred in August of 2008, a month before Mr. Davis claims to have become disabled; yet when he initially filed for benefits, he listed ADD as his only severe impairment. *(*Tr. 28). Since Mr. Davis was unable to provide any other supporting evidence to corroborate the ER physician's diagnosis, and because his symptoms were consistent with Dr. Markert's report and the record itself, the ALJ correctly found that Mr. Davis did not have a credibly documented history of a psychotic or anxiety disorder. (Tr. 25). Therefore, the ALJ properly excluded the ER physician's diagnosis from Mr. Davis's combination of severe impairments. (Tr. 28).

## C. THE ALJ FULLY DEVELOPED THE RECORD REGARDING SIDE EFFECTS FOR A DETERMINATION OF DISABILITY

When a claimant attempts to establish disability through his own testimony of subjective symptoms, the Eleventh Circuit has established a three-part test that requires: "(1) evidence of an underlying medical condition and either (2) objective

15

medical evidence that confirms the severity of the alleged [symptom] arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged [symptom]." *Carter v. Comm'r of Soc. Sec.*, 411 F. App'x. 295, 297 (11th Cir. 2011) (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). "If proof of a disability is based upon subjective evidence and a credibility determination is, therefore, critical to the decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

Also, a claimant's testimony about the nature of side effects must be credible and supported by medical evidence. *Daniels v. Astrue*, No. 1:07cv838, 2008 WL 2074436, at *3 (M.D. Ala. May 14, 2008). The Eleventh Circuit has affirmed an ALJ's decision that a claimant's testimony about the alleged levels of pain and symptoms he experienced was not credible when the allegations were inconsistent with activities of daily living, limited use of pain medication, and effectiveness of treatment. *See Wilson v. Barnhart*, 284 F.3d, at 1226.

In this case, there was no documented medical evidence of disabling side effects. (Tr. 74). Mr. Davis claimed that he heard giggles, but in Dr. Markert's CE, Mr. Davis explicitly denied hearing voices. (Tr. 28). With no psychotic diagnosis

from a psychologist or psychiatrist, and in light of Dr. Markert's CE, the ALJ correctly decided that the claimant's subjective complaints were not credible or based on any medical evidence.  *Id.*

Also, Mr. Davis testified at the hearing that he did not leave his room for three days a week on average. (Tr. 53). However, Mr. Davis stated that he engaged in multiple activities around the house that require daily work, such as taking the dog out and cleaning the house. *Id.*  Mr. Davis testified that two alternative reasons that he did not socialize more often were because he did not have a driver's license and he did not have any money, and not solely because of his severe mental impairments. (Tr. 66).  Furthermore, Ms. Garvey suggested that the only side effect of Mr. Davis's medication may be sedation, but no mention was ever made of a debilitating drowsiness.  (Tr. 29).  Therefore, the ALJ rightfully decided that the subjective complaint could not constitute a disabling side effect in the absence of any medical or objective evidence.

### D. THE ALJ PROPERLY DECIDED AGAINST ORDERING AN ADDITIONAL CONSULTATIVE EXAMINATION

An ALJ can order a CE "when one is necessary to make an informed decision" and is "one means by which an ALJ discharges his duty to fully develop the record." *McCray v. Massanari*, 175 F. Supp. 2d 1329, 1338 (M.D. Ala. 2001) (citing *Reeves*

17

*v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984)).  Federal regulations may require a CE when a conflict or inconsistency arises in the record, or the evidence is not sufficient to support a finding.  20 C.F.R. § 404.1519a(b). However, an ALJ may also order a CE at his discretion when: "There is an indication of a change in [the claimant's] condition that is like to affect [the claimant's] ability to work, but the current severity of [the] impairment is not established." 20 C.F.R. § 404.1519a(b)(5). It is reversible error for an ALJ to refuse to order a CE when "such an evaluation is necessary for him to make an informed decision."  *Reeves*, 734 F.2d at 522 n.1. However, the Eleventh Circuit has stated that when there is enough evidence in the record to make a decision, the ALJ is not required to order a second CE, as long as that evidence is consistent and "sufficient for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007).

Mr. Davis claimed that the ALJ committed reversible error when he did not order an additional CE.  (Pl.'s Br. 7).  However, the ALJ already ordered a CE with Dr. Markert in December of 2008, and the severity of Mr. Davis's impairments, including side effects, was fully established at the time of the ALJ hearing, as discussed above.  (Tr. 28–35).  In fact, the record substantiates that the medication would likely improve Mr. Davis's moderate limitations, and the ALJ had no reason

to believe that Mr. Davis's condition would deteriorate upon continuing his medication and therapy sessions, especially considering Mr. Davis's statement that medication had helped him with ADHD as a child.  (Tr. 23).  In this case, the severity of the impairment was established, and there was no indication in the record that there was going to be a change in Mr. Davis's condition that would alter his ability to work. Therefore, the ALJ's decision not to order an additional CE was supported by substantial evidence, and the Commissioner did not commit reversible error.

## IV. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY DETERMINATION

If a claimant cannot return to their previous work, the ALJ must determine if the claimant can make an adjustment to other work.  20 C.F.R. § 404.1520(g)(2).  The ALJ therefore must make a residual functional capacity ("RFC") determination to assess the claimant's remaining ability to do work despite his impairments, based on all relevant evidence.  20 C.F.R. § 416.945(a) (2012).  Factors that an ALJ uses to determine RFC include age, education, and work experience.  20 C.F.R. 404.1520(a).

The focus of this assessment is on the doctors' evaluations of the claimant's condition and the medical consequences thereof.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997).  In evaluating a claimant's RFC, the ALJ is obliged to consider all of the claimant's impairments.  *Id.*  The four functional areas summarized by

application of the Psychiatric Review Technique are broad categories to assist the ALJ in determining at steps two and three which of the claimant's mental impairments are severe, and then to determine the mental functional limitations on the claimant's ability to perform basic work activities. *See* 20 C.F.R. § 416.920(a)(c); SSR 96–8p, 1996 WL 374184, *4 (S.S.A. Jul. 2, 1996).

Determination of the functional limitations is a "highly individualized" and fact specific determination that complies with the "function by function assessment" addressing the plaintiff's work related mental activities set forth in SSR 96–8p. *Olsen v. Astrue*, 858 F. Supp. 2d 1306, 1318 (M.D. Fla. 2012). Work related mental activities include the ability and aptitude to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting. 20 C.F.R. § 416.921(b). The category of concentration, persistence or pace refers to the "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. While limitations in this category may best be observed in work settings, limitations may also be assessed through clinical examination or psychological testing that evaluates short-term memory and/or the completion of tasks that must be finished within established time

limits.  *Id.*  The category of social functioning refers to the "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals."  *Id.*  In a work setting, social functioning involves interactions with the public, supervisors and co-workers.  *Id.*

Dr. Robert Estock, M.D. evaluated Mr. Davis's mental functioning on December 12, 2008.  (Tr. 245).  In his report, he found that Mr. Davis had moderate limitations in several categories.  In the "Understanding and Memory" category, Dr. Estock found that the claimant had moderate limitations in his ability to understand and remember detailed instructions, but was not significantly limited otherwise.  (Tr. 243).  In the "Sustained Concentration and Persistence" category, Dr. Estock found that the claimant had moderate limitations in his ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, and the ability to complete a normal work day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, but was not otherwise significantly limited.  *Id.*  In the "Social Interaction" category, Dr. Estock found that the claimant had moderate limitations in his ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to get along with coworkers or peers without distracting them

or exhibiting behavioral extremes, and the ability to respond appropriately to changes in the work setting, but was not otherwise significantly limited. *Id.*

Consistent with Dr. Estock's evaluation, the ALJ found that Mr. Davis's severe impairments of mood disorder and history of ADHD were moderate limitations, and that Mr. Davis had the RFC to perform medium, unskilled work with limited contact with the public and occasional (one-third of the time) contact with coworkers and supervisors. (Tr. 15).

In Mr. Davis's case, the Court is satisfied that the ALJ made the function by function assessment that addresses the claimant's ability to perform work related activities. The ALJ concluded that Mr. Davis had the residual functional capacity to perform medium work with simple, repetitive, non-complex tasks. (Tr. 15). The ALJ considered all of the evidence discussed above and credited each appropriately, using them correctly to aid in his determination of RFC. (Tr. 29). The ALJ accounted for Mr. Davis's mood disorder by limiting Mr. Davis's contact with others. *Id.* The ALJ also accounted for Mr. Davis's ADHD by stating that Mr. Davis could no longer work at jobs that require a great deal of constant attention. *Id.* Then, the ALJ found that Mr. Davis was young, had an occupational high school education, and had worked at semi-skilled and unskilled jobs in the past. (Tr. 68–70). In fact, even though Mr. Davis had an occupational high school degree, the ALJ decided to only credit him

with "limited education." (Tr. 69). The ALJ determined that he would most likely not be able to return to his previous work because of his concentration and socialization limitations. *Id.* Next, the ALJ discussed Mr. Davis's impairments and reasons for being unable to work in the past. *Id.* Mr. Davis engaged in short-term employment as recently as February 2010, when he was fired as an auto technician mostly due to concentration problems and the inability to get along with others. *Id.* The ALJ decided that it is likely that Mr. Davis would be able to do simple work that would not require constant full attention, and a job in which he had contact with coworkers and supervisors only a third of the time, with limited or no public interaction. (Tr. 70–75).

Courts have reversed and remanded claims in the past when the ALJ's RFC limitation did not address the whole of the claimant's moderate difficulties in social functioning or his moderate difficulties in concentration, persistence or pace. *See e.g.*, *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180–81 (11th Cir. 2011). Also, "a restriction to unskilled work plainly does not cover a moderate limitation in social functioning." *Millhouse v. Astrue*, No. 8:08–CV–378–T–TGW, 2009 WL 763740, *3 (M.D. Fla. Mar. 23, 2009). Unskilled work has been found insufficient to account for difficulties in concentration, persistence or pace, unless the medical evidence clearly demonstrates otherwise. *Id.* In *Winschel*, the court found limitations

to simple, routine tasks or to unskilled work would not, standing alone, typically be sufficient to account for a plaintiff's moderate limitations in concentration, persistence or pace. *Winschel*, 631 F.3d at 1180.   Similarly, in *Brunson v. Astrue*, the court found limiting the plaintiff to unskilled jobs without unusual stress did not address the impact of the plaintiff's moderate limitations in concentration, persistence, or pace on his ability to perform work-related activities. *See*, 850 F. Supp. 2d at 1300–04.

Evidence in the record suggests that Mr. Davis has had moderate difficulties in relationships with others, including supervisors. (*See*, e.g., Tr. 26).   The Regulations clearly state that these relationships fall under the umbrella of social functioning. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.   The record also establishes that Mr. Davis had moderate difficulties in concentration. (Tr. 26).   Thus, the ALJ followed the Regulations and Eleventh Circuit binding authority in discussing, and limiting, his RFC to potential jobs that were "medium work except with the limitations that they be simple, repetitive, non-complex in nature . . . primarily . . . around things and not the general public,"  and have contact with coworkers and supervisors only one-third of the time. (Tr. 70).   Therefore, the ALJ's function by function analysis that the claimant was not disabled was based on substantial evidence, and the Commissioner did not commit reversible error.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision applies the proper legal standards and is supported by substantial evidence. Accordingly, the decision is due to be **AFFIRMED**.

**DONE** and **ORDERED** this the 18th day of November, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

25